**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeals of Schneeberger    }
                     }    Docket No. 11-1-04Vtec
                     }
                     }    Docket No. 12-1-04 Vtec
                     }

<u>Decision and Order on Motion for Summary Judgment</u>

In Docket No. 11-1-04 Vtec, George and Hilda Schneeberger appealed from a decision of the Planning Commission of the Town of Marlboro dated December 19, 2003, granting site plan approval for the use of the barn at the Colonel Williams Inn for public gatherings such as weddings and receptions. In Docket No. 12-1-04 Vtec, the Schneebergers appealed from a decision of the Zoning Board of Adjustment of the Town of Marlboro, apparently made on the record of its meeting on December 11, 2003, and referenced in a " Notice of Decision" letter dated December 20, 2003, granting a conditional use permit for the use of the barn at the Colonel Williams Inn for public gatherings such as weddings and receptions. Appellants George and Hilda Schneeberger are represented by Robin Stern, Esq.; Appellee-Applicants Tom and Denise Ware, doing business as the Colonel Williams Inn, are represented by Patricia M. Beu, Esq.

Appellants have moved for summary judgment on several issues. The following facts are undisputed unless otherwise noted.

Appellee-Applicants own an inn property, known as the Colonel Williams Inn, in the Rural-Commercial zoning district of the Town of Marlboro. The property has been in use as an inn for many years, and aspects of its present use may be grandfathered, but no determination of its pre-existing status under § 340 of the Zoning Regulations appears to be at issue in the present appeals. Unlike in some other municipalities (see, <u>e.g.</u>, the City of Burlington), the Marlboro Zoning Regulations do not contain a separate " historic inn" use category.

As well as the main inn building, the property includes a separate building known as the Carriage House, a garage, and an 88' x 43' barn. The barn is located on a curve of Stuyver Hill Road, so that the long side of the barn is located 85 feet from the edge[1] of the road and the end of the barn (where one set of doors is located) is located 81 feet from the edge of the road or other boundary. The barn is located across the road from Appellants' property and is much closer to Appellants' house than are the other inn buildings. The main inn building contains eleven guest bedrooms, with ten private bathrooms, and contains dining facilities serving breakfast and dinner. Nothing in the materials provided by the parties indicates whether any owner or resident manager also resides on the premises. The carriage house building contains two studio apartments with kitchenettes and private baths. Because the main inn building is designed to room and board more than 10 people, it does not fall within the definition of "boarding, rooming house, guest farm or bed and breakfast" in the Zoning Regulations, unless it has grandfathered status as a preexisting oversized bed-and-breakfast, or as a hotel. Because the Carriage House is equipped with kitchenettes, it technically appears to qualify as a two-family dwelling, although it instead may be considered as an accessory use to the main inn use under those regulations.

While Appellee-Applicants disputed the Zoning Administrator's September 10, 2003 determination that the use of the barn for functions require a conditional use permit or permit amendment, they did not appeal that determination to the ZBA, and it became final. Instead, on October 9, 2003, Appellee-Applicants submitted an application to the ZBA requesting the use of the " barn on premises of Colonel Williams Inn for wedding receptions up to 200 people." Only the

use of the barn (and not the use of tents) is at issue in this application. The dimensions of the building are listed as 88' by 43'.

The sketch (not to scale) submitted as part of the application shows the driveway serving the Carriage House, areas for parking around the Carriage House and between the road and the barn, and showed what appears to be a driveway between the end of the barn and the road. It also shows a portable toilet to be located westerly of the southwest corner of the barn, which suggests that the barn has no toilet facilities. Curiously, on the last page of the application, under " Type of Application," the box for " Application for Conditional Use" is not checked; rather, the next box is checked for " Variance from the Zoning District Dimensional Requirements."

A separate photocopy of a portion of what appears to be a property survey, submitted at some point in connection with the application, contains numbered areas for parking, keyed to a list entitled " off-road parking roster" which lists 14 parking areas totaling 94 parking spaces. None of the plans submitted with the application show the property contours (at least in the vicinity of the buildings and the proposed parking areas); or show any existing paved, graveled, or landscaped areas; or show any existing or proposed curb cuts or access from Stuyver Hill Road; or show the dimensions of any proposed driveways or parking areas; or show the proposed pathways of circulation by which vehicles would reach and leave the parking areas during the proposed events.

Neither the ZBA nor the Planning Commission appears to have issued a written decision containing findings of fact or the reasons for its decision. The parties have not provided the Court with the minutes of any meetings at which either body may have stated its findings or conclusions orally at the meeting. Because the appeal is de novo, a lack of findings is only cause for remand if it fails to meet the minimum requirements of the state enabling statute for actions of the ZBA or Planning Commission, respectively.

The Planning Commission issued a written decision in letter form, internally dated 19 December 2003 and signed by all the members, stating in full:

We have received your site plan submitted in conjunction with your application (#03-29) to the Zoning Board of Adjustment for a Conditional Use Permit. Based on our authority under section 203 and our review of sections 308 and 435, and as is consistent with other businesses in town, we have approved the site plan with the following conditions:

(1) All parking for events in the barn or outside tents must take place on-site. Parking should be in the areas noted on the site plan, in a manner that allows for safe access and adequate circulation of traffic. To provide you maximum flexibility, the setbacks specified in Section 308 will be waived for this purpose.

(2) No vehicles are to be parked on the traveled portion of the town road.

The ZBA issued a written " Notice of Decision" in letter form signed by the chairman, internally dated 20 December 2003, stating in full:

At a hearing of the Marlboro Zoning Board of Adjustment on 2 December 2003, and continued on 11 December 2003, the Zoning Board of Adjustment granted a conditional use permit for use of the barn on the property of the Colonel Williams Inn for the purpose of public gatherings, such as weddings and receptions. The ZBA notes that the property owners must meet the parking requirements defined by the Marlboro Planning Commission and places the following conditions on this permit:

1. No more than twelve (12) events each year may take place in the barn

2. No more than one (1) event per week may take place in the barn.

3. Any music at events in the barn shall cease at 10:00 p.m.

Adequacy of Planning Commission findings

While the Planning Commission decision lacks findings, unlike the requirement in 24 V.S.A. § 4470(a) applicable to the ZBA, nothing in the zoning enabling statute in effect at the time these decisions were made required a planning commission either to issue a written decision or to include findings in its decision. It is certainly the better practice to incorporate findings and conclusions in any administrative decision, so that the parties understand the basis for the decision, but it is not required of a planning commission. Therefore, there is no basis to conclude the planning commission appeal in Appellants' favor, or to remand the matter for further action by the Planning Commission. Rather, we will consider de novo whether the site plan meets the standards in the Zoning Regulations for approval, as to the adequacy of traffic access, circulation and parking, the adequacy of landscaping and screening, and the adequacy of protection of renewable energy resources.

Adequacy of site plan application

Under § 203 of the Zoning Regulations, all uses other than camps or one-or two-family houses require site plan approval. Even if the inn and carriage house uses of the property were determined to be preexisting and grandfathered, any expansion of those uses would require site plan approval.

The application did not provide sufficient information as required under § 203 regarding existing contours and features, proposed site grading, existing trees, shrubs and other vegetation to be preserved, proposed landscaping and screening, and especially the proposed layout of roads, driveways, walkways, traffic circulation and parking spaces. While there is no requirement that the plans be prepared by a surveyor or engineer, it is not sufficient merely to show the general location of parking. That is, site plan approval requires a demonstration of the actual layout of parking, on-site circulation, and the access from the public road for those functions, as well as landscaping and screening, if any are proposed. We will expect Appellee-Applicants to submit supplementary materials in the hearing on the merits of the site plan. Of course, if these materials differ substantially from what the Planning Commission was able to consider (such as if the locations of proposed parking are substantially changed from the application), we will at that time rule on whether the site plan approval appeal needs to be remanded to the Planning Commission for its consideration of those materials.

Parking standards

Section 435 of the Zoning Regulations requires twenty-foot-wide driveways and 9' x 22' parking spaces. Nothing on the site plan shows the width of any driveways to reach the parking spaces, nor the layout of the parking spaces in the locations indicated by the key numbers on the plan. That section lists the parking requirements for some uses, and allows the Planning Commission, and hence this Court in a de novo appeal, to impose requirements for > other uses' and to require additional off-street parking and loading spaces if it finds that the minimum number of required spaces are not sufficient.

If the Inn itself qualifies under category 2 in the parking regulations, approximately 13 to 14 parking spaces would be required for the guests staying in the main inn building and the carriage house building, depending on how the two-room suite is counted and whether there is a resident manager. In addition, if the restaurant in the Inn serves dinner to guests other than those staying at the Inn, it would require parking as a > restaurant, eating and drinking establishment." We

cannot calculate the amount of parking required for this function, as the parties have not provided either the floor space or the number of seats allocated to the restaurant, although they allude to some of this information in their memoranda. For the proposed use of the barn for up to 200 guests, the Planning Commission required that parking should be in the areas proposed on the site plan, and not on the " traveled portion" of the town road, but did not specify the number of spaces that should be required. In the merits hearing, we would expect to take evidence on the number of guests per vehicle expected for wedding and reception functions, and whether food would be served in the barn, to estimate the parking required for the proposed functions of up to 200 people, assuming that only approximately up to 30 of them would be staying on the property as guests in the inn and carriage house buildings. If meals would not be served in the Inn's restaurant at the same time as the barn would be in use for these functions, Appellee-Applicants are free to propose shared parking for the restaurant and function uses.

Section 308 provides that front yard parking shall be single-row only, encourages shared access drives and parking areas, encourages parking areas to be located in the side and rear yards when possible, and allows side and rear setbacks to be waived for shared access and parking. The required front, side and rear setbacks are all 30 feet in this district. No side or rear setbacks appear to be implicated in the proposed parking or access areas for this proposal, although it is difficult to tell from the application materials.

The Planning Commission stated that to provide " maximum flexibility" to Appellee-Applicants, " the setbacks specified in Section 308 will be waived" for the purpose of parking and circulation. It is unclear to the Court which, if any, setbacks were waived by the Planning Commission by this statement. To the extent that the Planning Commission intended to waive the 30-foot front setback, it had no authority to do so under this section. In the hearing on the merits, therefore, we will examine whether the front yard parking is proposed as single-row parking, and will take up any application for waiver of the side or rear yard setbacks that may be necessary to promote shared access or parking with any adjacent uses.

Compliance with state and local health requirements

Section 202(1)(c) of the Zoning Regulations requires the zoning Administrative Officer to determine that all state and town health requirements have been complied with, before issuing a zoning permit. For conditional use approval, in turn, the ZBA must determine that the proposal will not adversely affect any bylaws then in effect. § 204(5)(d). This requirement incorporates § 202(c)(1) into the ZBA's consideration of conditional use approval. If the state wastewater permit needs to be amended for the proposed use, or a town septic permit needs to be obtained, the ZBA must address those issues in its consideration of conditional use approval.

Adequacy of ZBA findings

The ZBA's decision on the conditional use application is required to include findings. 24 V.S.A. § 4470(a); and see § 204(3) of the Zoning Regulations. The decision of the ZBA on appeal in this case is entirely devoid of findings, and we cannot tell whether it even considered the general or specific standards for conditional use approval. Therefore, even though the matter is de novo before the Court, the ZBA decision must be vacated and remanded. See, e.g., Appeal of Highgate Springs Protective Assn., Docket No. 125-8-97 Vtec (Vt. Envtl. Ct., May 4, 1998). As we discussed in that decision:

Because we cannot determine the grounds for the ZBA's approval of this application, we cannot address it in the first instance in this court. The matter must be remanded to the ZBA to consider the application according to the regulations. Even though the proceedings in this court are de novo, the scope of this court's consideration remains an appellate one. This Court acts "within its proper role when it decides questions that have been formulated in the local approval process

and which divide the parties. It is beyond its role as an appellate tribunal, even under a de novo review standard," to address an issue which the local process has failed to address. In re Maple Tree Place, 156 Vt. 494, 500 (1991).

Accordingly, based on the foregoing, Appellants' Motion for Summary Judgment is GRANTED as to Docket No. 12-1-04 Vtec, in that the decision of the ZBA was entirely devoid of findings. 24 V.S.A. § 4470(a). Effective on October 8, 2004, the ZBA's decision will be entered as VACATED and REMANDED, concluding this appeal, unless before that date the parties file a stipulation to the contrary. On remand, the ZBA may decide to take additional evidence or simply to issue a more complete written decision containing findings, based on the evidence it already heard.

Appellants' Motion for Summary Judgment is Granted in Part and Denied in Part as to Docket No. 11-1-04 Vtec, in that the site plan application did not provide adequate information, but it is not remanded at the present time[2]; rather, the Court will consider the site plan application de novo in the hearing on the merits.

The hearing on the merits originally scheduled for September 28 and 29, 2004, has already been postponed at the request of the parties to facilitate their discussion of a resolution of this matter. By agreement of the parties, we have reserved January 4 and 5 for any merits hearings that may be necessary in either of these appeals or their successor appeals. We will expedite any future appeal from any future ZBA (or Planning Commission) decision, and will address any request for waiver of a filing fee in such future appeal when and if it is filed. Please note that any such future appeal will be a new case with a new docket number.

Done at Barre, Vermont, this 16th day of September, 2004.

_____

Merideth Wright

Environmental Judge

---

**Footnotes**

[1.]     It is not clear from either the sketch or a portion of a survey (with handwritten markings) submitted with the application whether these measurements are to the edge of the road right-of-way, to the edge of the traveled way of the road, to the property line, or to some other feature.

[2.]     Of course, the parties are free to stipulate to vacate and remand the site plan decision as well, if they wish to present a substantially different proposal to the Planning Commission, in conjunction with the remanded proceedings before the ZBA.